Your Honor, and may it please the court. My name is Justin Livingston, and along with my co-counsel, Linda Dewey, we represent Appellant Kelvin Singleton. We are both certified law students. I'll be addressing if a sufficient evidence exists on the record to support the elements of Singleton's retaliation claim, and my co-counsel will be addressing the effects of the magistrate's adverse inference sanction. Judgment as a matter of law is proper only if the evidence, when taken in the light most favorable to Singleton, permits only one reasonable conclusion, and when no conflicting inferences can be drawn. Here, there are three points upon which a reasonable jury could determine that the test administered to Singleton was targeted and either ordered by or unduly influenced by Hernandez himself. First, the unorthodox test administration, which Singleton was subjected to only two months after Appellee Hernandez was served with Singleton's prior state civil suit. Second, Hernandez's suspicious failure to carry out the obligations integral to his role as head of R.J. Donovan's investigative services unit. And third, Hernandez's questionable denial of awareness of Singleton's prior state civil suit. The test was administered- Can I ask you, could I ask you just to, I know you have an issue with the admission of the, what are we calling it? It's that list, you know, of the people who've been randomly selected. Yes, sir. But let's assume, let's assume that we were going to affirm the district court's decision to let that in, notwithstanding its late production. Yes, sir. I guess I just don't, I don't understand how any of the three points you just picked off matter in light of once we have that list and the, the undisputed testimony, as I understand it, is that Hernandez had nothing to do with putting your client's name on that particular list. So can you just help me understand in the context of the jury being presented with that list and the evidence being that Hernandez had nothing to do with the creation of that list, how does your case not basically just evaporate at that point? Yes, sir. And there are two reasons for that. First, the production of the list doesn't address the absence of the chain of custody that shows whether or not the test was manipulated or obstructed in any manner, or whether the test... I thought that issue wasn't in front of us. I thought, I thought the, we're not here to decide whether or not the test was accurate. Your only claim is that administration of the test violated his first amendment rights, correct? Yes, your honor. No tampering with the legislature's initial... Okay. So forget, forget what happened after the test was administered. If, if this, if he, if he was randomly selected as this list shows, how do we get any further on, on retaliation? Sure, your honor, because there is sufficient circumstantial evidence on the record to show that the random testing list, which may show that the test was randomly administered, is not sufficient and that there were interfering forces here, showing that the test was targeted. Your honor... Tell me, tell me what they were. That's what, that's why I'm asking the question. We, our cases say two months isn't, isn't a sufficient time period, isn't sufficiently close to give rise to a inference of retaliation. The Mr. Hernandez testifies that, well, I don't remember that I was sued. I was probably told, so we can assume for purposes of this, that he knew he was sued two months before. But what is there in this record from which a reasonable jury could find that he administered the test as retaliation from that, other than the proximity in time? Yes, your honor. A lot of this information ties to Hernandez's role as head of the investigative services unit and the duties which he failed to carry out, which showed that he had some motive in shrouding evidence, particularly the logbooks tied to the order of the tests and which a reasonable jury should have been given the opportunity to determine. Well, that's, I know your, I know your co-counsel is going to address the inference, but let me give you a tentative view on that. It seems to me all we can infer from the absence of the logbook is that the logbook wouldn't have shown that Mr. Singleton was listed for random testing. I don't think we can infer more from that. Can we, can we infer that it would have shown that there was a plot to, that he wrote in the logbook, he would have written in the logbook that I had a plot to do this, to retaliate? And that's, that seems to me not a reasonable inference from its absence. Yes, your honor. We know that the logbook contains information tied to the chain of custody or its absence. However, because the logbook was absent and because Hernandez himself testified that the logbook was paramountly important to determining whether the test was it's possible that the logbook could have contained information showing that Hernandez did order the test. Well, let's see. That's why I asked whether we were dealing with the events with the accuracy of the test. It seems to me if we were here fighting about whether the test was accurate or manipulated, then the absence of the logbook would show chain of custody and other things would be pretty relevant. But here, if we're only talking about whether he was scheduled for testing randomly, uh, not, uh, not scheduled because as retaliation, it seems to me the most the logbook could have shown was that he wasn't on the random list. Do you agree? Your honor, I think that the logbook could have pointed to information in addition to the fact that he wasn't on the random list, so it was actually targeted for the test. Is it reasonable to think the logbook would have contained information about targeting? Your honor, the logbook wouldn't explicitly contain language or information pertaining to the fact that the test was targeted, but Singleton was tested in addition to the fact that he was already regularly tested as part of the substance abuse program. And as a result of the test, Singleton did feel harassed and as though Hernandez abused his power. This court in Broadbeam stated that the threat of harm can be an adverse action. These threats don't need to be explicit and that the power of a threat lies in apprehension that stems within the recipient. Because this test was presented to Singleton on a day when those tests don't usually occur and by Officer Martinez rather than Officer Barrera, who standardly carried out the test administration for Singleton, in addition to the harassment that Singleton felt and the consequences he suffered, including the loss of his job, visitation rights, and his future work prospects. No, I get all of that. Time's running and I need to ask a question, a series of questions that ties into this logbook question. We have this list that was introduced late. The government lets it, the court lets it in. And on this list is Mr. Singleton's name. And that list purports to be the randomly selected list of prisoners to be tested. Is there anything that might have been in a logbook entry, given the way the log, given what we know about what the logbooks show or would have shown, that would have cast doubt upon the validity of that list of the people who are randomly selected? Yes, Your Honor. The logbook contains information pertinent to the chain of custody that the list itself does not contain. As part of this chain of custody. Chain of custody of what? Of the urine sample or a chain of custody of something else? Yes, Your Honor. A chain of custody of the urine sample that Singleton submitted as part of his testing. Right. So if that's the only thing that the logbook's going to show is chain of custody of the urine sample. My question then remains, is there anything about the logbook, were it to be discovered, were it to be revealed, that might have cast doubt upon whether or not that list of all the people randomly selected was in fact the genuine list? Your jury, Your Honor, a jury could have inferred that there was information in the logbook stemming from the chain of custody that showed that Hernandez did order the test. We don't necessarily know all the key information. That's the same question I asked before differently. Why would, why could the jury infer that if the logbook simply showed the chain of custody, would there be any rise to any doubt about whether or not your client was randomly selected? Your Honor, the logbook contains information about inmates' identification, just as the list does, but the chain of custody information could have shown the hierarchy and the fact that Hernandez ordered this test, which is intended to support the retaliation claim. And Your Honor, this is also information that my co-counsel will be discussing further. Let me, we're going to take you over your 11th amendment, over your 11 minutes, but don't worry about that. We'll give you the time to reply. I want to keep pursuing this question because the evidence is pretty thin for your client. Let's assume that there's evidence from which the jury could infer that Hernandez really had it. They filed the lawsuit, here it is two months after the lawsuit. He doesn't like to be sued. Part of that lawsuit is that Hernandez basically lied as to what was going on during the prison riot. If I'm Hernandez, I don't like that. Hernandez says, I don't remember being sued. I don't remember doing singleton. I mean, the jury's perfectly entitled to disbelieve that. Assume the jury disbelieves that. And assume then that the jury says, I bet that Hernandez ordered the test in the sense that he ordered that there be a randomly generated list of people to be tested. Well, if that's the only thing Hernandez did, he was, he was basically shooting in the dark, kind of hoping that a random list would contain Singleton's name. So if he's really trying to get back at Singleton, if I'm a prison guard, I got a lot better ways to get at the prisoner that I'm mad at than having a random, setting up a random list that may or may not contain the guy's name and almost certainly will not. So help me out. Help me understand why if the only thing we know or that the jury can infer is that Hernandez wanted to retaliate against Singleton and that his form of retaliation was to ask that the random list be generated. And lo and behold, it turns out to be Singleton. Is there anything other than that that we can, that the jury is supposed to infer about targeting? Yes, your honor. I think the additional information stems from Hernandez's role as head of the investigative services unit. Primarily the responsibilities that he had tied to that role that show his conduct likely led to shrouding the production of the logbook and the fact that that logbook was intentionally shrouded. He was tasked with enforcing the qualities and procedures surrounding drug tests, and he was supposed to preserve records relevant to drug tests. But that then comes back to the question that both Judge Hurwitz and I have been or pages would have told us that the test, that the randomly generated list of names wasn't in fact randomly generated. Your honor, this is information that my co-counsel is prepared to certainly. Let's hear from your co-counsel. And we'll give you some chance to answer about. Please support Linda Blake on behalf of the court. Your honor, in addition to the circumstantial evidence my colleague has expressed, the magistrate's adverse inference supports two additional reasons why judgment as a matter of law should have been denied. First, the adverse inference allowed the jury to infer that the missing logbook supported Mr. Smith's retaliation. Well, that's, that's, please, before you get on with that, because that's the issue I've been struggling with. We, we know what logbooks show, don't they? They show the chain of custody of the urine sample, correct? Yes, your honor. They don't show how and when people are selected to provide the urine sample. Not explicitly, your honor. Okay. So, what advert, I could draw an inference if I were dealing with the accuracy of the sample or the chain of custody that the logbook would be harmful to Mr. Hernandez, but that issue is not in front of us. So tell us how the missing logbook would have demonstrated that your client wasn't simply randomly chosen for. Your honor, so the magistrate had granted this distinction after defendants failed to produce the logbook, and this court has recognized that adverse inferences are rooted in common sense. And so, the jury could come to this common sense conclusion that Hernandez didn't produce the logbook because he was threatened by it, especially considering the fact that this was the only time he lost logbooks in his 25 year career, and despite being directly responsible for the logbook, he could the evidentiary inference, and this is a matter of evidence law, that the missing document would have contained information helpful to you. It doesn't, it's not, it doesn't give you an inference of the motive of somebody destroying it. It just gives you an inference that the document would have had information helpful to you. And that's what I'm struggling with, because if the only information it would have had was about chain of custody, not an issue in front of us, how would it have been helpful to you on your retaliation claim? Your honor, the chain of custody information could still be helpful to Mr. Singleton's retaliation claim, because considering Hernandez's authority as lieutenant, and his complete access to logbooks, the jury could find that Hernandez was involved in this retaliatory drug test, just based on the information provided in the logbook. If the jury could infer based on the chain of command and Hernandez's authority, that Hernandez was involved in ordering and administering this retaliatory drug test. Do the logbooks tell us who ordered a test to be performed? I thought the logbook only would tell us the chain of custody of the urine sample. Maybe I'm just wrong about what the logbook ordinarily contains. Yes, your honor, the logbook ordinarily contains just the chain of custody information regarding the urinalysis sample. However, based on what this adverse inference, a jury could infer that Hernandez was somehow implicated by the logbook content, because it contained information unfavorable to him and unfavorable to our client. And so given all the evidence about lieutenant Hernandez's authority, the jury could find that this drug test was not random, but that Hernandez had a role in targeting Singleton for this drug test. That's my point. And that's, that's, that's, that's the sticking point for me. You say, given the information that might've been in the logbook, the jury could find that the test wasn't random. Help me, help me understand how that could be so. Yes, your honor. The logbook could reveal further irregularities that would allow a jury to conclude that the test was not random, in addition to the circumstantial, the other circumstantial evidence unrelated to the logbook. Don't, don't we have an example of what a, a logbook entry looks like in the record? Yes, your honor. So the April, the April 25th date, am I right about that? Yes, your honor. Okay. So I'm looking at that page and just to follow up on judge Fletcher's question, I cannot for one second, see how you're able to argue that the information that would be contained in this logbook entry, if we had it for the, the date back in January, how it could show that the list of people selected for random drug testing was not in fact random. It just, the only additional information that I see on this page is just somebody has handwritten in the date that the sample was collected and whom it was collected by. Yes, your honor. The logbook contents itself would explicitly show who was involved in this drug administration, such as who collected the sample, which officer picked it up from the evidence locker. And as I mentioned, the, these pieces of information could reveal irregularities that don't comport with how random, real random drug tests are ordinarily administered. And so the irregularity that would have been shown in the logbook page, according to Mr. Singleton, your regularity would show that it was officer Puerling who picked it up, even though it was Martinez who handed out the test. So I'm willing to give him that, but just the fact that Puerling picks it up, which is then going to be shown up as who, uh, who collected it. That doesn't tell me much at all about, maybe it doesn't tell me anything about who might've ordered the test as to whether the randomly generated list of names was somehow phony. I mean, all it tells me is who picked it up and, and I'm willing to, I'm willing to totally willing to credit Mr. Singleton's testimony that it was Puerling, even though it should have been the same officer and that it was in that fashion, irregular. What else might the logbook have shown? Yes, Your Honor. Well, because we don't have the actual particular logbook entry pertinent to this drug test, it's not possible to know what exactly the entry could have suggested or showed. But in terms of making a reasonable inference, that's why Judge Watford's pointing to, we know what logbooks typically show. They typically show who picked up the sample and how it was the chain of custody as it was processed. So you're asking us to infer that this logbook page that's missing would have contained something that's not ordinarily in logbooks, a notation by, or some evidence that Hernandez was acting in a retaliatory fashion. That, that strikes me as not a reasonable inference if we know what logbooks normally show. Mr. Honor, so we know what the logbook would ordinarily show, but again, we don't know what this particular logbook could have shown. And based on the adverse inference that it was somehow unfavorable to Lieutenant Hernandez, the jury could find that it, the logbook did implicate and reveal, did implicate Hernandez and reveal his role in this retaliatory drug test. And the jury was not required to believe that the random list was actually random. I mean, defendants produced this list conveniently after they were sanctioned and denied summary judgment when the district court specifically found issue with the fact that defendants had no documentary evidence showing that this test was as they had pledged. And the evidence that we have here as to the randomly generated list of names that's produced late after, after we get the adverse inference that's recommended by the magistrate judge, after the district judge says, yes, I'm going to draw an adverse inference based upon the absence of the randomly selected list of names, all of a sudden the list shows up, which is of course suspicious. But do we have any evidence beyond the fact that it shows up only after the adverse inferences endorsed by the district judge, that it's a phony list? Your Honor, there is no direct evidence otherwise that. Yeah, I mean, that's, that's, that's the problem. It seems to me that it may well be a phony list. I don't know, but we don't have any evidence that it's a phony list. If the inference we might draw the fact that it's produced late. Yes, Your Honor. Well, the district court recognized that the lieutenant had established the evidence that these logbooks were missing, that Lieutenant Hernandez was responsible for these logbooks and all this circumstantial evidence. And so based on the fact that the absence of the logbook was established, Lieutenant Hernandez's responsibility for and access to the logbooks was established, considering the adverse inference, the jury could come to the reasonable conclusion that Hernandez targeted Smilton in this retaliatory drug test, despite what the allegedly random list shows. Okay. Thank, thank, I think, thank you very much. Any further questions for Ms. Bui from the bench? Thanks very much. Let's hear from Mr. Finley, and then we'll get some rebuttal time from Mr. Livingston. Thank you. Thank you, Your Honor. May it please the court, Christopher Finley appearing on behalf of Defendants Fernandez and Martinez. All three judges on the panel correctly pointed out that plaintiff failed to come forward with evidence to support his retaliation claim because the missing logbook would not show that Hernandez ordered the test, especially in light of the random list admittedly produced late, but that conclusively proved that Mr. Singleton was chosen for drug testing at random. Well, what if the logbook, if produced, would have had no record at all of a test on Mr. Singleton? Would that be some evidence that he wasn't randomly selected? So in dealing with the adverse inference instruction, the magistrate judge dealt with two different issues. The first was, did Hernandez order the test? And the second was the chain of custody issues. Were there improprieties in the test? Did something go wrong in the test? And the magistrate judge looked at these two very differently. So first, as to whether Hernandez ordered the test, the court found the logs could be prejudicial because there's no other documentary evidence. It was just the officer's testimony that, yes, I pulled the name off the list. As to all the chain of custody and possible tampering, the officer, the wrong officer correcting the sample, the court found there was no prejudice as to those issues for the... Okay, so focus on the first one for me. If, is the absence of a page relating to Mr. Singleton's test, does it give rise to an inference that maybe it wasn't random? No, especially in light of the actual random list being produced. It, the, the, we never had the jury instruction. We had a rule 50 motion before the jury ever, instruction ever came into play. So there's no reasonable inference that the log would say, yes, I would say... Well, no, the question is whether the judge should have sent it to the jury. So let me, let me lay out an argument for the other side and have you respond to it. The argument goes, the log book, the absence, we can infer from the failure to produce the log book that there would have been an absence of records about Mr. Singleton. If there was an absence of a log book record as to Mr. Singleton, that would be some evidence that the random list that was generated, that was produced really wasn't a random list and it was produced late, et cetera, et cetera. So wouldn't that be, would that be enough to get the case to the jury on retaliation? Not, not on the facts in front of the district court. The way the list came in, the random list came in was through the plaintiff's case. And then on the defense case, Sergeant Duncan, a third party witness, and this is at excerpts of record 134, 135, walks the judge and the jury through how the list was generated from a software program developed in Sacramento, how he personally printed the list, how it was impossible to add a name to a list. Well, that's what he says. And maybe he's telling the truth and maybe not. Here's a question that ties into what Judge Hurwitz is just saying. It's possible, it seems to me, and I've not been able to pull this out of the other side, but it's possible, it seems to me, that if we were to look at the logbook, what we would have is a pre-printed list of people who are to be tested, as in fact, we've got an example of a logbook from another, another test. We'd have all the people pre-printed and then at the bottom in handwriting would be Mr. Singleton's name. And then we have a chain of custody for his urine sample. But oddly enough, his name was not on the pre-printed list for the logbook. It was added in by handwriting. If that's what the logbook shows, that suggests that the later produced list of random names is a phony. But there was no other evidence, circumstantial or otherwise, that the actual list that was presented was a phony. And I understand what I'm saying is, if I'd seen the logbook, I could be convinced that it wasn't a phony. But I haven't seen the logbook, so I don't know whether Singleton's written in by hand instead of pre-printed, because for some reason they could come up with the random list, but they couldn't come up with a logbook. I'll be darned. Well, and to go back to the record, keep in mind that what the magistrate judge found was there was no bad faith in withholding the, in not being able to produce the logbooks, the excerpts of record 179 and 180. And then as to whether or hypothetically there could be a name written in the logbook, there just wasn't any evidence of that. And there was nothing to indicate. Well, there's no evidence of that because you haven't produced the page. Well, of course, there's no evidence of that. That's precisely the problem. Right. Well, here, what the district court, in exercising its discretion in deciding the way to give the adverse inference and how to interpret the adverse inference, was faced with very clear testimony in an actual document, which shows that Mr. Singleton's name was produced at random. And so it's very clear testimony, but witnesses lie sometimes. Understood, but it's an abusive discretion standard as to whether the court, the weight the court gives that adverse inference instruction and the interpretation the court gives that adverse inference instruction. And given the fact that, I'm sorry. Finish. I just I want to ask you a question, but I want you to fit your answer. And the basis of the adverse inference instruction was not that I think that Hernandez is lying. It is that what creates the prejudice. And this is in the record at page 182. What creates the prejudice is the lack of other documentary evidence. So once that evidence was produced by the defendant, that adverse inference instruction became obsolete and the district court correctly gave it very little weight. Well, no, wait a minute. Now, again, I said the last one question, I'm sorry. I mean, everything would. Well, there's an adverse inference from the failure to produce the random list. There's an adverse inference from the failure to produce the logbook. And if the adverse inference from the failure to produce the logbook allows room for a suspicion that Mr. Singleton's name was added in handwriting, well, bingo, you guys are in big trouble. That wasn't the magistrate judge's ruling. What the magistrate judge found was that the absence of other documentary evidence left the jury with one witness, Officer Martinez, testifying that the name was on the list and no way to provide other documentary evidence by plaintiff or defendant that Hernandez didn't order the test. So the magistrate, if the court looks at the record at 182, what the magistrate judge found was the absence of other documentary evidence creates a prejudice to plaintiff's ability to present his case. And once that absence of documentary evidence is gone because we produced the actual list, then the basis for the ruling was gone. I understand, Judge Fletcher, your point, which was, well, the log could have showed this or I, the magistrate judge, I'm concerned that a name was written in there. But that wasn't the basis of the magistrate's ruling. What the magistrate judge actually found was the absence of other documentary evidence provides prejudice to the plaintiff. And as a result, I'm giving this adverse inference instruction. So the question I wanted to ask assumes and I know you don't want to assume this, but let's assume that there was sufficient evidence from which a reasonable juror could find that Mr. Singleton was not randomly tested. Just just assume that for for present purposes, I'm now left with the question of was there sufficient if you assume that is there sufficient evidence to allow a reasonable juror to assume that it was Lieutenant Hernandez who ordered the nonrandom test? What? So assume that the test assume that the test was proved not to be random for a moment. They could never come up with a list that showed him he was to be randomly tested. I'm still worried in this case about whether there's sufficient evidence to go to the jury with respect to Lieutenant Hernandez. Our case law says proximity of. The previous protected activity is not enough and two months is is not all that probative. What else? So what else is there that would tie Lieutenant Hernandez to this test other than the fact that he was generally in charge of the testing process? Yes. And I'm going to assume that there was the elements to prove retaliation. But nothing. If the court goes back and looks at the description of how the tests were administered, Lieutenant Hernandez was in charge of the investigative services unit, which ran all the criminal investigations in the prison. He did not. He was not involved in the day to day testing. You can see that both in Sergeant Duncan's testimony at one thirty four, one thirty five and then in Lieutenant Hernandez testimony. It doesn't look like that. Hernandez have the authority or power to order that a test be performed. I think the answer to that is, yes, the answer is yes. He has to follow. And did Martinez say who ordered the test to be performed? If you look at Martinez's testimony at the records one seventeen one eighteen, Martinez was very clear that he was handed a random list and that Hernandez had never spoke with him about it, was not. No, that's not his testimony. His testimony is I can't remember. I think if we look at one eighteen, one seventeen, one eighteen, the excerpts of the record, did Lieutenant Hernandez order you to test Mr. Singleton? Did you ever discuss testing Mr. Singleton with Lieutenant Hernandez? No. Was Lieutenant Hernandez involved in any way in writing your rules violation report against Mr. Singleton? No. And then there's another point at which I think he says, I don't remember. I there in the rules violation hearing, he says, I believe that relates to who collected the test. There was some dispute on the exam where in the original rule violation, which was held months later, he said, well, who collected the sample? And the officer Martinez says, well, I don't remember. And on then on cross, he says, well, if I wrote the rule violation, I collected it. But I don't think he says I don't remember. I don't believe that there's anywhere in the record where there's also evidence that was excluded as hearsay, maybe properly so. But Singleton wanted to testify and would have testified had he been permitted to testify that Martinez told him that Hernandez ordered the test. I think if you look at the courts, the court's ruling on the motions eliminate, I'm not I'm not sure. I'm not sure the court is wrong to exclude it. But there's something about this case that just smells to me. Well, let me let me address your direct question, which was, could Singleton have testified that Martinez told him that Hernandez ordered and tested? And the answer is yes. The court district court said, you go ahead and do that. You cannot come into it's hearsay. It cannot come into evidence as to the question of whether Hernandez actually ordered and testified. But you can. It comes in for the purpose of questioning the credibility of Martinez. But then that's the court's ruling on the motion. At trial, Singleton never testifies at all. So turning back, turning back to the adverse inference instruction, it's important to note that the adverse inference instruction only relates to whether or not Hernandez ordered the test. It doesn't relate to the chain of custody. And the testimony is very clear, including the testimony you just heard from Officer Martinez, that Hernandez had nothing to do with the day to day collection of samples or the chain of custody or anything like that. And the reason that the magistrate judge didn't want to have an adverse inference instruction as to the chain of custody or the tampering or anything else like that is because all of that was documented in the rule of violation, for which Mr. Singleton had a hearing in front of another hearing officer other than Lieutenant Hernandez and was found guilty. So the magistrate judge felt comfortable that all this circumstantial evidence didn't relate to the missing logs because all of that was documented in the actual rule violation documents. And that's at the... Can I ask you, can I ask you a just a small question about the record? Does the record disclose for us why the, why, why your clients were able to produce the random list, but not the log book for that particular time? Uh, if you look at Lieutenant Hernandez's declarations, I think that's at a supplemental excerpts of record 51 and 54, he describes how the log books were maintained. They were put in a binder and then, uh, put, and then once the binder filled up, they were put in the back room and they look for him. He looked for them twice and just couldn't find them. And that's, what's in the record. As to the list and why it was produced late, the explanation is, um, there's nothing nefarious if the court looks at the record at pages seven and eight. It was the doc, the plaintiff never requested the list. It requested all documents related to the drug test. Oh, baloney. But that's, that was just, of course it was requested. Yeah. And we don't dispute that. Uh, we don't dispute that it was responsive to discovery, but if you look at the record, what happened was counsel wasn't aware that the list existed and the actual clients didn't know it was responsive. So once the court entered the adverse inference instruction, that caused a reexamination of everything. We produced the list. It was produced nearly a year before trial. We reopened discovery, allowed the plaintiff to depose, uh, right. But, but the reason I'm asking the question is that if I'm, if I'm looking at that document from April 25th, it appears to me that what you all are representing as a true logbook entry is nothing more than the random list, but with handwriting filled in on those right-hand columns. Am I right about that? You're correct. Yes, Your Honor. So that's why I don't understand why then were you able to find the list, but not the logbook entry? They, they're, they're the same document. Just the one has some additional handwriting written in. That's what I can't figure out. So if you go back and look at Sergeant Duncan's testimony on, uh, one, three, I think it's one, three, four, one, three, five. The list, the actual list was preserved in the, uh, prison's computer program. The logbooks were, had handwriting on them and were put in binders and were lost, but the actual list was maintained on the computer. And so once everybody figured out that it was responsive and necessary, uh, they were able to print the records off the computer. Well, I'm, I'm looking at, uh, AGO 469 and the date is 4-25-2016. And I gather this is just a sample of a logbook for a different collection. Is that correct? I think that include, included a, um, I believe that was, uh, Mr. Singleton was on that one too. He was, but that, I think that's a different collection than the one at issue in this case. That's just an example of how the logbook operates. Correct. Yeah. Right. So, so we don't have a page of the logbook for the, for this particular test. This is just an example of how it operates. Which brings me back to the question of if we had the true logbook page for the day at home on the, for the test and issue, we would have Mr. Singleton's name typed there along with just in the ordinary course of events. That's for some reason that page is missing. Uh, and Lieutenant Hernandez's testimony was actually, there's been a dispute about this, but Lieutenant Hernandez's testimony was all the logbooks from that time period were missing. It wasn't, there, this is, there was a question. This is the only logbook you've ever lost. And he says, yes, but if you look at his, uh, the, the cross-examination, he testifies that the logbooks, uh, all the logbooks from that time period were missing and also in his declarations in response to, uh, the motion for sanction. So the record in this case, isn't that Mr. Singleton's page was lost. It was the entire logbook for that time period was not recovered. That's correct. And that's why you have the later logbook from April, 2016, but none of the earlier logbooks. Yeah. The inference might be different. I think if the logbook was recovered and the page that Mr. Singleton was on was torn out, do you agree? I would agree. Um, and I think, do we, do we know each logbook, how many different tests are contained in a logbook? The reason I'm asking that is that the randomly separate, the randomly generated list was one 20. I can't read it as 2015. Is that right? Yeah. So when we lose a logbook, do we know how much is lost? Like how many, how many, how many pages, how many, how, how long a time period? That, that is not in the record. It's just a little, uh, lieutenant Hernandez testified, uh, in response to the evidentiary sanction motions. And, uh, at trial that the logbook was, um, the logbooks from that time period were missing, but we don't have a number. Okay. I got it. Any further questions from the bench? Okay. Thank you. Uh, and Mr. Livingston, let's put two minutes on the clock, please. For rebuttal. Mr. Livingston, are you doing the rebuttal instead of Mr. Livingston? Yes, Your Honor. Your Honor, I'd like to address three points that appellee raised. First is, Hernandez's plausible role in this retaliatory drug test. Second is the magistrate's reasoning in the sanction order and why the adverse inference was still necessary after the production of the random worst. And third is the proximity, um, point that we have in favor of Singleton. So as to the first point, the evidence demonstrates that Hernandez had a plausible role in this drug test, especially given that Martinez testified at trial that it could have been any lieutenant who ordered this test, including Hernandez. He specifically said it couldn't have been Hernandez. And the fact that Hernandez was responsible for these logbooks, and this was the only time he had lost logbooks in his 25-year career and it happened to include Singleton's, the logbook entry pertaining to Singleton's drug test. Um, and as to the contents of the logbook that would reveal Hernandez's role, we don't know exactly what the logbook could have shown. It could have had Hernandez's initials, um, showing that he approved the, the conduct of, um, other officers administering this drug test. It could have had Singleton's name handwritten. We, we don't know what the logbook could have shown. Was, was any argument made to the district judge that the logbook page had had been produced might have shown that Singleton's name was added in handwriting? Was that argument ever made to the judge? Your Honor, the argument made at the district court level was that, that Hernandez could have added Singleton to the list, because that is what... To the list, to the list where? To the list on the, in the logbook or to the list that's randomly generated? Your Honor, it's not clear exactly which, uh, list that the, the appellant's, um, appellant's were referring to there, but there was the argument that Hernandez ordered or added Singleton's name to a list in targeting him for, um, in retaliation for his prior civil suit. And to address the magistrate's reasoning for the sanction order and why this appersentence was still necessary, the magistrate said that there would be nothing he could use to show that the test was retaliatory. And that's still true even after the production of the random list. The logbook is still the only document that Singleton could use and it's missing. Um, and the record shows that at the time of the rule 15 motion, the address inference sanction was still incorporated in the proposed jury This court in Allen found that 11 months between, uh, an inmate's protective conduct and the prison official's response was sufficient, um, to support an inference of retaliatory motive. And so given... Not by itself though, right? You agree that, that the proximity is not sufficient by itself to get you to the jury? Yes, Your Honor. But the, the proximity along with Lieutenant Hernandez's authority and the adverse inference, based on all of this, the jury could infer that Hernandez had a role in this retaliatory drug test. And at this procedural posture, the district court was required to disregard all evidence favorable to the moving party and that the jury wasn't required to believe. Doctor, the testimony or evidence supporting Hernandez's claim that this drug test was random. So I see that I'm over my time. Um, I just want, if I may conclude. Well, you've got one or two sentences to sum up and then you're finished. Yes, Your Honor. So with all of the evidence and the adverse inference that the magistrate thought was warranted, a reasonable jury could have found that Hernandez orchestrated this drug test in retaliation. Thank you. Thank you very much. I would like, on behalf of the bench, to thank and to compliment both, very nice argument. Uh, I wish all of the lawyers were good and as careful as you have been. And to thank you and to compliment you. I would give the same compliments to Mr. Finley, but you're being paid for this, Mr. Finley, and you've had more experience. But thank both sides for very nice arguments and an interesting case. A case of Singleton versus Kernan is now submitted for decision and we're in the adjournment. Thank you. This court for this session stands adjourned.
judges: W. Fletcher, Watford, Hurwitz